**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**UTICA DIVISION**

| | |
|---|---|
| AYANNA SHABAZZ, Individually and For Others Similarly Situated<br><br>v.<br><br>TRUSTEES OF THE MASONIC HALL AND ASYLUM FUND d/b/a MASONIC CARE COMMUNITY OF NEW YORK | Case No. <u>6:25-CV-1297</u> (AJB/ML)<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Ayanna Shabazz brings this class and collective action to recover unpaid wages and other damages owed by Trustees of the Masonic Hall and Asylum Fund d/b/a Masonic Care Community of New York under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL).

2.     Shabazz worked for Masonic Care as a certified nursing assistant (CNA).

3.     Masonic Care paid Shabazz by the hour.

4.     Shabazz regularly worked 8 to 16 hours a day, 4 to 6 days a week.

5.     But Masonic Care did not pay Shabazz at least 1.5 times her regular rates of pay—based on all remuneration—for all hours worked after 40 in a week.

6.     Instead, Masonic Care paid Shabazz non-discretionary bonuses that it excluded from the "regular rate" for overtime purposes (the "bonus pay scheme").

7.     Masonic Care's bonus pay scheme violates the FLSA and NYLL because overtime is not paid at 1.5 times its employees' regular rates of pay.

8.     And Masonic Care does not pay Shabazz for all hours worked, in violation of the FLSA and NYLL.

9.      Instead, Masonic Care automatically deducted 30 minutes a day for so called "meal periods" (Masonic Care's "auto-deduction policy").

10.     Masonic thus did not pay Shabazz for this time.

11.     But Shabazz did not actually receive *bona fide* meal periods.

12.     Instead, Masonic Care required Shabazz to remain on duty and perform compensable work throughout her shifts, including during "meal periods," and subjected her to work interruptions during "meal periods."

13.     Further, despite NYLL § 195(3), Masonic Care does not provide accurate, complete, and/or compliant pay statements.

14.     Nor does Masonic Care provide the accurate and/or compliant written notices required by NYLL § 195(1).

15.     Masonic Care's failure to provide accurate and/or compliant itemized wage statements and/or written notices cause its employees (including Shabazz) to suffer concrete and cognizable injuries, including obscuring the wages they are lawfully owed and preventing them from determining the wages they are lawfully owed, preventing them from determining improper deductions from their wages, and by delaying their ability to remedy Masonic Care's underpayment of their wages.

## JURISDICTION & VENUE

16.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

17.     This Court has supplemental jurisdiction over the state law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18.     As a New York not-for-profit corporation, Masonic Care is subject to general personal jurisdiction.

19.     Venue is proper because Masonic Care maintains its principal place of business in

Utica, New York, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

PARTIES

20. Shabazz worked for Masonic Care as a CNA from approximately April 2024 to March 2025.

21. Throughout her employment, Masonic Care paid Shabazz under its bonus pay scheme and auto-deduction policy.

22. Shabazz's written consent is attached as **Exhibit 1**.

23. Shabazz brings this class and collective action on behalf of herself and similarly situated Masonic Care employees paid under its bonus pay scheme and/or auto-deduction policy.

24. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees paid under Masonic Care's bonus pay scheme and/or auto-deduction policy during the past 3 years through final resolution of this action (the "FLSA Collective Members").**

25. Shabazz also seeks to represent a class under FED. R. CIV. P. 23.

26. The class is defined as:

> **All hourly employees in New York who Masonic Care paid under its bonus pay scheme and/or auto-deduction policy during the last 6 years and 228 days[1] through final resolution of the Action (the "New York Class Members").**

27. The FLSA Collective Members and New York Class Members are collectively referred to as the "Hourly Employees."

28. Masonic Care is a New York not-for-profit corporation.

---

[1] Governor Cuomo's Executive Orders tolled the NYLL's statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended the statutes of limitations); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

29.     Masonic Care may be served through an authorized person at its registered address: **2150 Bleecker Street, Utica, New York 13501**.

## FLSA COVERAGE

30.     At all relevant times, Masonic Care was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

31.     At all relevant times, Masonic Care was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

32.     At all relevant times, Masonic Care was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

33.     At all relevant times, Masonic Care's annual gross volume of sales made or business done exceeded $1,000,000 per year.

34.     At all relevant times, the Hourly Employees were Masonic Care's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

35.     At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

36.     Masonic Care is a skilled nursing, adult care, and rehabilitation center that touts itself as a "first class facility" providing care for "more than 500 elders."[2]

37.     To meet its business objectives, Masonic Care hires employees, including Shabazz and the other Hourly Employees, to provide skilled nursing and rehabilitation services to its patients.

---

[2] https://masonichomeny.org/about/ (last visited August 26, 2025).

38. Shabazz worked as a CNA for Masonic Care from approximately April 2024 to March 2025.

39. Shabazz's job duties included assisting residents with activities of daily living, such as cooking, eating, cleaning, bathing, and brushing teeth.

40. Shabazz typically worked from 4 to 6 days a week, 8 or 16 hours a day (32 up to 96 hours a workweek) "on the clock."

41. Masonic Care paid Shabazz approximately $20.75 an hour.

42. The other Hourly Employees work similar schedules "on the clock."

43. Masonic Care required Shabazz and the other Hourly Employees to report their "on the clock" hours via Masonic Care's designated timekeeping system.

44. Masonic Care thus knows Shabazz, and the other Hourly Employees, regularly work 40 or more hours in a week.

45. But Masonic Care does not pay its Hourly Employees overtime at the required premium rate.

46. Instead, Masonic Care pays Shabazz and the other Hourly Employees under its bonus pay scheme.

47. Specifically, Masonic Care agrees to pay and subsequently pays Shabazz and the other Hourly Employees non-discretionary bonuses, including bonuses for picking up open shifts, based on Masonic Care's criteria.

48. But Masonic Care excludes these bonuses from its Hourly Employees' regular rates of pay for overtime purposes.

49. For example, in the pay period ending August 18, 2024, Masonic Care paid Shabazz 9 $50 bonuses, but excluded this remuneration from her regular rate of pay for overtime purposes:

**Earnings**

| Description | Shift Name | Rate | Hours/Pieces | Current |
|---|---|---|---|---|
| Regular | $0.75 - Evening | 20.75 | 49.75 | 1032.31 |
| Overtime | $0.75 - Evening | 31.12 | 56.25 | 1750.78 |
| Bonus | | 20.00 | | 50.00 |
| Bonus | | 20.00 | | 50.00 |
| Bonus | | 20.00 | | 50.00 |
| Bonus | | 20.00 | | 50.00 |
| Bonus | | 20.00 | | 50.00 |
| Bonus | | 20.00 | | 50.00 |
| Bonus | | 20.00 | | 50.00 |
| Bonus | | 20.00 | | 50.00 |
| Bonus | | 20.00 | | 50.00 |
| Educate | | | | |
| CNA Split | $0.75 - Evening | 22.25 | 26.75 | 595.19 |
| CNA Split OT | $0.75 - Evening | 33.38 | 8.00 | 267.00 |
| No RA | $0.75 - Evening | 22.25 | 3.50 | 77.88 |
| **Total Earnings** | | | 144.25 | 4173.16 |

50.    Thus, even though Shabazz worked overtime hours, Masonic Care did not pay her overtime at a rate of at least 1.5 times her regular rate of pay based on all remuneration.

51.    Additionally, Masonic Care subjected Shabazz to its auto-deduction policy, deducting 30 minutes each workday for so called "meal periods."

52.    But throughout her employment, Shabazz did not actually receive *bona fide* meal periods.

53.    Shabazz and the Hourly Employees perform their jobs under Masonic Care's supervision and use materials, equipment, and technology Masonic Care approves and supplies.

54.    Masonic Care requires Shabazz and the Hourly Employees to follow and abide by common work, time, pay, "meal period," and overtime policies and procedures in the performance of their jobs.

55.    At the end of each pay period, Shabazz and the Hourly Employees receive wages from Masonic Care that are determined by common systems and methods that Masonic Care selects and controls.

- 6 -

56.    Masonic Care requires Shabazz and the Hourly Employees to record their "on the clock" hours worked using Masonic Care's timekeeping system.

57.    Masonic Care subjects Shabazz and the Hourly Employees to its common auto-deduction policy.

58.    Specifically, Masonic Care automatically deducts 30 minutes a workday from Shabazz's and the other Hourly Employees' hours and wages for so called "meal periods."

59.    Masonic Care automatically deducts this time regardless of whether Shabazz and the Hourly Employees actually receive uninterrupted, 30-minute meal periods.

60.    Masonic Care simply assumes Shabazz and the Hourly Employees receive *bona fide* meal periods each shift they work.

61.    But Shabazz and the Hourly Employees do not actually receive *bona fide* meal periods.

62.    Instead, Masonic Care often requires Shabazz and the Hourly Employees to remain on duty and perform compensable work throughout their shifts for Masonic Care's predominant benefit, including during "meal periods."

63.    And Masonic Care regularly subjects Shabazz and the Hourly Employees to work interruptions during their unpaid "meal periods."

64.    Thus, Shabazz and the Hourly Employees are not free to engage in personal activities during their unpaid "meal periods."

65.    Rather, during their unpaid "meal periods," Shabazz and the Hourly Employees are forced to substantially perform their regular patient care job duties and responsibilities.

66.    Thus, Shabazz and the Hourly Employees routinely spend their unpaid "meal periods" performing work for Masonic Care's predominant benefit.

67.    This unpaid time is compensable under the FLSA and NYLL because Masonic Care knew, or should have known, that (1) Shabazz and the Hourly Employees were performing unpaid

work during their "meal periods," (2) they were interrupted with work duties during any attempted "meal period," (3) they were not completely relieved of all duties during their "meal periods," (4) they entirely skipped the "meal period" due to work demands, (5) the "meal period" was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their "meal periods" because of work interruptions, (7) they remained on Masonic Care's premises or under Masonic Care's supervision, and/or (8) they spent their unpaid "meal periods" substantially performing their regular patient care duties for Masonic Care's predominant benefit.

68.    Masonic Care fails to exercise its duty as Shabazz's and the Hourly Employees' employer to ensure these employees are not performing work that Masonic Care does not want performed during their unpaid "meal periods."

69.    And Masonic Care knows Shabazz and the other Hourly Employees routinely perform work "off the clock" during their unpaid "meal periods" because Masonic Care expects and requires them to do so.

70.    Shabazz and the other Hourly Employees have complained to Masonic Care's management, HR, and/or their supervisors about being forced to work during their unpaid "meal periods."

71.    Thus, Masonic Care required, requested, suffered, or permitted Shabazz and the Hourly Employees to work during their unpaid "meal periods."

72.    Despite accepting the benefits, Masonic Care does not pay Shabazz and the Hourly Employees for the compensable work they perform during their automatically deducted "meal periods."

73.    Thus, under Masonic Care's auto-deduction policy, Shabazz and the Hourly Employees are denied overtime pay for on duty "meal periods" during workweeks in which they work more than 40 hours.

74.    Making matters worse, Masonic Care did not provide Shabazz with accurate and compliant written notice of all information required by NYLL § 195(1) at the time of her hiring.

75.    Masonic Care's wage notice gave an inaccurate regular rate of pay and overtime rate of pay.

76.    Masonic Care provides similarly noncompliant wage notices to the New York Class Members.

77.    Shabazz and the other New York Class Members were injured due to Masonic Care's failure to provide the wage notices required by NYLL § 195(1).

78.    Masonic Care also failed to provide Shabazz accurate, itemized wage statements as required by NYLL § 195(3).

79.    Specifically, Masonic Care's itemized wage statements do not show Shabazz's overtime rate of pay as at least 1.5 times her regular rate of pay and do not show all hours she worked.

80.    Masonic Care provides noncompliant wage statements to the other New York Class Members.

81.    Each pay period, Masonic Care provides the New York Class Members with wages statements showing inaccurate overtime rates.

82.    Masonic Care's failure to provide accurate and compliant wage notices, as required under NYLL § 195(1), caused Shabazz and the New York Class Members to suffer informational harm and prevented them from knowing whether, and to what extent, Masonic Care underpaid them.

83.    Masonic Care's failure to provide accurate and compliant wage notices as required by NYLL § 195(1) deprived Shabazz and the other New York Class Members of the ability to ensure Masonic Care made proper payroll tax deductions on their behalf.

84.    Masonic Care's failure to provide accurate and compliant wage notices as required by NYLL § 195(1) deprived Shabazz and the other New York Class Members of the ability to ensure

Masonic Care made proper deductions from their pay in the correct amounts.

85.     Masonic Care's failure to provide wage statements as required by NYLL § 195(3) concretely injured Shabazz and the other New York Class Members.

86.     Masonic Care's failure prevented Shabazz and the New York Class Members from knowing whether, and to what extent, Masonic Care underpaid them.

87.     Masonic Care's failure to provide accurate and compliant itemized wage statements prevented the New York Class Members from ensuring Masonic Care made required payroll tax deductions.

88.     It also deprived Shabazz and the other New York Class Members of the ability to ensure Masonic Care properly made other deductions from their pay in the correct amounts.

89.     Masonic Care's willful violations of NYLL § 195(1) and (3) prevented Shabazz and the other New York Class Members from taking action to correct Masonic Care's NYLL violations (e.g., underpaying overtime wages) at an earlier time, resulting in numerous workweeks for which the New York Class Members were deprived of the time value of their earned wages and numerous workweeks for which they are now time-barred from recovering their earned wages.

90.     Masonic Care's wage notices and itemized wage statements told the New York Class Members they have been paid all the wages they owed when, in fact, Masonic Care owed them additional overtime wages.

91.     Masonic Care's issuance of false, deceptive, and/or misleading wage notices and itemized wage statements concretely harmed Shabazz and the other New York Class Members by falsely informing them they had been paid in full for their labor when, in fact, they were owed additional overtime wages.

92.     Masonic Care hid its NYLL and FLSA violations and prevented or impeded Shabazz and the other New York Class Members from obtaining full payment of wages owed to them in a

timely fashion.

93.     Throughout their employment, the New York Class Members relied—to their detriment—on Masonic Care's representations regarding full payment of wages.

94.     Had Masonic Care provided accurate and legally compliant wage notices and itemized wage statements, Shabazz and/or other New York Class Members would have undertaken self-advocacy and/or brought an earlier action to recover such unpaid wages.

95.     Indeed, after learning Masonic Care underpaid her, Shabazz brought this action, albeit on a timeframe slowed by Masonic Care's misrepresentations.

96.     But for Masonic Care's false, deceptive, and/or misleading wage notices and itemized wage statements, Shabazz and the New York Class Members would have avoided the lost time-value of their unpaid wages by recovering sooner.

97.     Put simply, had Masonic Care complied with NYLL § 195(1) and (3), the New York Class Members would have known Masonic Care owed them overtime and could have pursued payment.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

98.     Shabazz brings her claims on behalf of herself and the other Hourly Employees.

99.     Masonic Care's bonus pay scheme, auto-deduction policy, and notice violations victimized Shabazz and the other Hourly Employees.

100.     Shabazz worked with other Hourly Employees who indicated they were subject to Masonic Care's bonus pay scheme, auto-deduction policy, and suffered similar notice violations.

101.     Based on her experience with Masonic Care, Shabazz is aware Masonic Care's bonus pay scheme, auto-deduction policy, and notice violations were imposed on other Hourly Employees.

102.     Shabazz and the Hourly Employees are similarly situated in the most relevant respects.

103.     Even if their precise job duties and locations might vary, these differences do not

matter for the purpose of determining their entitlement to overtime wages.

104.    Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

105.    Rather, Masonic Care's bonus pay scheme, auto-deduction policy, and notice violations render Shabazz and the other Hourly Employees similarly situated for the purpose of determining their right to overtime pay and statutory damages.

106.    Masonic Care's records show the number of "on the clock" hours worked each week by the Hourly Employees.

107.    Masonic Care's records show it automatically deducted 30 minutes each workday from the Hourly Employees' hours and wages for so called "meal periods."

108.    Masonic Care's records show the non-discretionary bonuses Masonic Care excluded from their regular rates of pay for overtime purposes.

109.    The back wages and other damages owed to Shabazz and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

110.    Even if the issue of damages was somewhat individual in character, the damages can be calculated by reference to Masonic Care's records, and there is no detraction from the common nucleus of liability facts.

111.    Therefore, the issue of damages does not preclude class or collective treatment.

112.    Shabazz's experiences are typical of the experiences of the other Hourly Employees.

113.    Shabazz has no interest contrary to, or in conflict with, the Hourly Employees that would prevent class or collective treatment.

114.    All the Hourly Employees share a common interest in obtaining the unpaid wages and damages owed under federal and New York law.

115.    A class and collective action, such as the instant one, is superior to other available

means for fair and efficient adjudication of the lawsuit.

116.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Masonic Care will reap the unjust benefits of violating the FLSA and NYLL.

117.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

118.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

119.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

120.    Among the common questions of law and fact are:

a.  Did Masonic Care pay the Hourly Employees non-discretionary bonuses;

b.  Did Masonic Care exclude non-discretionary bonuses when calculating the Hourly Employees' regular rates of pay for overtime purposes;

c.  Did Masonic Care pay the Hourly Employees overtime at the required premium rate (i.e., based on all remuneration);

d.  Did Masonic Care automatically deduct 30 minutes for "meal periods";

e.  Did Masonic Care's auto-deduction policy deprive the Hourly Employees of wages for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted;

f.  Did Masonic Care provide accurate and complete wage notices at the beginning of New York Class Members' employment as required under NYLL § 195(1);

g.  Did Masonic Care provide the New York Class Members with accurate, itemized wage statements including the information required by NYLL §

195(3); and

h.   Whether Masonic Care's FLSA and NYLL violations were willful?

121.   There are many similarly situated Hourly Employees who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

122.   This notice should be sent to the Hourly Employees pursuant to 29 U.S.C. § 216(b).

123.   The Hourly Employees are known to Masonic Care, are readily identifiable, and can be located through Masonic Care's business and personnel records.

## MASONIC CARE'S VIOLATIONS WERE WILLFUL

124.   Masonic Care knew it was subject to the FLSA's and NYLL's overtime provisions.

125.   Masonic Care knew the FLSA and NYLL required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

126.   Masonic Care knew each Hourly Employee worked more than 40 hours in at least one workweek during the 6 years and 228 days before this Complaint was filed because it recorded their "on the clock" hours via its timekeeping system.

127.   Masonic Care knew it automatically deducted 30 minutes a workday from the Hourly Employees for so called "meal periods."

128.   Masonic Care knew the Hourly Employees did not actually receive work free, uninterrupted 30 minute meal periods each workday.

129.   Masonic Care knew the NYLL required it to provide itemized notices regarding the timing, frequency, calculation, total amount, etc. of earned wages to the New York Class Members.

130.   Masonic Care knew the Hourly Employees were its non-exempt employees.

131.   Masonic Care's failure to pay its Hourly Employees premium overtime wages of at

- 14 -

least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek and failure to provide required notice was not reasonable or in good faith.

132.    Masonic Care knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and NYLL.

133.    Masonic Care knowingly, willfully, and/or in reckless disregard carried out its auto-deduction policy and bonus pay scheme that deprived the Hourly Employees of overtime wages at the proper premium rate and failed to provide compliant wage notices, in violation of the FLSA and NYLL.

**COUNT I**
**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**
**(FLSA COLLECTIVE)**

134.    Shabazz brings her FLSA claims as a collective action on behalf of herself and the other Hourly Employees.

135.    Masonic Care violated, and is violating, the FLSA by employing non-exempt employees, such as Shabazz and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

136.    Masonic Care's unlawful conduct harmed Shabazz and the other Hourly Employees by depriving them of the premium overtime wages they are owed.

137.    Accordingly, Masonic Care owes Shabazz and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

138.    Because Masonic Care showed reckless disregard for whether its bonus pay scheme violates the FLSA, Masonic Care owes Shabazz and the other Hourly Employees these wages for at least the past 3 years.

139.    Masonic Care also owes the Hourly Employees an equal amount as liquidated

- 15 -

damages.

140.    Finally, Shabazz and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**COUNT II**
**FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL**
**(NEW YORK CLASS)**

141.    Shabazz brings her NYLL claims as a class action pursuant to FED. R. CIV. P. 23.

142.    Masonic Care's conduct violated and continues to violate the NYLL and its implementing regulations. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142 *et seq.*

143.    At all relevant times, Masonic Care was subject to the NYLL because Masonic Care was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

144.    At all relevant times, Masonic Care employed Shabazz and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

145.    The NYLL requires employers, like Masonic Care, to pay non-exempt employees, including Shabazz and the other New York Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek. NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

146.    Shabazz and the other New York Class Members are entitled to overtime pay under the NYLL.

147.    Masonic Care violated, and is violating, the NYLL by employing the New York Class Members for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

148.    Masonic Care's unlawful conduct harmed Shabazz and the other New York Class Members by depriving them of the premium overtime wages they are owed.

149.    Accordingly, Masonic Care owes Shabazz and the other New York Class Members the difference between the wages actually paid and the required overtime wages actually earned, plus interest on those amounts. *See* NYLL §§ 198(1-a) and 663(1).

150.    Because Masonic Care acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law, Masonic Care is also liable to Shabazz and the other New York Class Members for an amount equal to all their unpaid wages as liquidated damages. *See* NYLL §§ 198(1-a) and 663(1).

151.    Finally, Shabazz and the other New York Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. *See* NYLL §§ 198(4) and 663(4).

### COUNT III
### FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS
### (NEW YORK CLASS)

152.    Shabazz brings her NYLL § 195(3) claims as a class action on behalf of herself and the other similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

153.    Masonic Care's conduct violated and continues to violate the NYLL and its implementing regulations. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142 *et seq.*

154.    At all relevant times, Masonic Care was subject to the NYLL because Masonic Care was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

155.    At all relevant times, Masonic Care employed Shabazz and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

156.    Masonic Care did not provide the New York Class Members with accurate or compliant itemized wage statements as required by NYLL § 195(3).

157.    With each payment of wages, Masonic Care fails to provide the New York Class Members with an accurate statement listing the categories of information required by NYLL § 195(3):

   a.    The dates of work covered by that payment of wages;

b.      Name of employee;

c.      Name of all employers;

d.      Address and phone number of each employer;

e.      Rate or rates of pay and basis thereof, whether the employee

is paid by the hour, shift, day, week, salary, piece, commission,

or other;

f.      Gross wages;

g.      Deductions;

h.      Allowances, if any, claimed as part of the minimum wage;

i.      Net wages;

j.      The regular hourly rate or rates of pay;

k.      The overtime rate or rates of pay;

l.      The number of regular hours worked; and

m.      The number of overtime hours worked.

158.    Masonic Care provided inaccurate wage statements that understate the New York Class Members' regular rates and earned overtime wages.

159.    Masonic Care issued wage statements to Shabazz and New York Class Members falsely informing them they had been paid in full and were owed no further overtime wages.

160.    Masonic Care's wage statement violations injured Shabazz and the New York Class Members.

161.    Masonic Care's failure to provide accurate and compliant itemized wage statements caused the New York Class Members informational harm by preventing them from learning: (1) Masonic Care had underpaid them; (2) the extent of the underpayment; (3) whether Masonic Care made proper payroll tax deductions and other deductions on their behalf each pay period.

162.    It also prevented Shabazz and the New York Class Members from taking action to correct Masonic Care's wage and hour violations at an earlier time, resulting in both the loss of the time value of earned wages and causing other workweeks to be barred by the statute of limitations.

163.    Masonic Care willfully violated NYLL § 195(3) by providing wage statements informing Shabazz and the New York Class Members they were paid all wages owed when, in fact, they were owed additional overtime wages.

164.    By failing to provide them with statutorily-required wage information about the wages Masonic Care owed them, Masonic Care hid its violations of the NYLL and took advantage of these employees' lack of legal sophistication.

165.    Due to these violations, Masonic Care owes Shabazz and each of the New York Class Members $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Member, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

## COUNT IV
### FAILURE TO PROVIDE ACCURATE WAGE NOTICES (NEW YORK CLASS)

166.    Shabazz brings her NYLL § 195(1) claims as a class action pursuant to FED. R. CIV. P. 23.

167.    Masonic Care's conduct violated and continues to violate the NYLL. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*

168.    At all relevant times, Masonic Care was subject to the NYLL because Masonic Care was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

169.    At all relevant times, Masonic Care employed Shabazz and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

170.    Masonic Care failed to provide Shabazz and New York Class Members with a written notice upon hire containing the following categories of information required by NYLL § 195(1):

a.    The rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

b.    For non-exempt employees like Shabazz and New York Class Members, the overtime rate of pay;

c.    Allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;

d.    The regular pay day designated by the employer;

e.    The name of the employer;

f.    Any "doing business as" names used by the employer;

g.    The physical address of the employer's main office or principal place of business, and a mailing address is different;

h.    The telephone number of the employer; and

i.    Regular hourly rate and overtime rate of pay.

171.    Instead, Masonic Care's wage notices falsely "informed" Shabazz and New York Class Members of understated (or left unstated) regular hourly rates of pay and overtime rates of pay, and the basis thereof, that disguised the fact Masonic Care underpaid overtime wages to them.

172.    Masonic Care's failure to provide compliant notices injured the New York Class Members.

173.    Masonic Care's failure to provide accurate and compliant wage notices as required under NYLL § 195(1) prevented Shabazz and the New York Class Members from knowing the regular rates and overtime rates of pay they were owed.

174.    Masonic Care's failure to provide accurate and compliant wage notices prevented the New York Class Members from: (1) ensuring Masonic Care made proper payroll tax deductions on their behalf each pay period; (2) ensuring Masonic Care made other required deductions in the correct

amounts each pay period; (3) taking action to correct Masonic Care's wage and hour violations at an earlier time (resulting in multiple workweeks becoming time-barred).

175.    Masonic Care hiding its violations of the NYLL and took advantage of these employees' lack of legal sophistication by failing to provide them with statutorily-required wage information.

176.    Masonic Care harmed the New York Class Members by issuing false, deceptive, and/or misleading wage notices.

177.    Had Masonic Care provided accurate and legally compliant wage notices to Shabazz, Shabazz would have acted sooner, whether through self-advocacy and/or filing an action for unpaid wages.

178.    Masonic Care's wage notice violations cost the New York Class Members the time-value of their unpaid wages, which could have been recovered sooner.

179.    Due to these violations, Masonic Care owes Shabazz and each New York Class Member $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Member, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

## JURY DEMAND

180.    Shabazz demands a trial by jury.

## RELIEF SOUGHT

Shabazz, individually and on behalf of the other Hourly Employees, seeks the following relief:

>    a.    An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing written consents;

b.   An Order certifying a class action;

c.   An Order appointing Shabazz and her counsel to represent the interests of the New York Class Members;

d.   An Order finding Masonic Care liable to Shabazz and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.   An Order finding Masonic Care liable to Shabazz and the New York Class Members for all unpaid overtime wages and wage statement recovery owed under the NYLL, plus liquidated damages in an amount equal to their unpaid wages, and all statutory damages owed;

f.   A Judgment against Masonic Care awarding Shabazz and the Hourly Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or NYLL;

g.   An Order awarding attorneys' fees, costs, and expenses to the Hourly Employees;

h.   Pre- and post-judgment interest at the highest applicable rates; and

i.   Such other and further relief as may be necessary and appropriate.


Dated: September 15, 2025                              Respectfully submitted,

                                                      **BRUCKNER BURCH PLLC**

                                                      By: */s/ Richard J. Burch*
                                                          Richard J. (Rex) Burch
                                                          NY Reg. No. 6154876
                                                          NDNY Bar Roll # 704544
                                                      11 Greenway Plaza, Suite 3025
                                                      Houston, Texas 77046
                                                      Phone: (713) 877-8788
                                                      Fax:    (713) 877-8065
                                                      rburch@brucknerburch.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR SHABAZZ AND
THE HOURLY EMPLOYEES**